FILED
JAN 2 2008
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JEROME A. MAHER and JOHN R. GRAVEE, )
Plaintiffs, )
v. )
THE UNITED STATES, )
Defendant. )

08- 12 C

## COMPLAINT

NOW COME the Petitioners, JOHN R. GRAVEE and JEROME A. MAHER, by and through their attorney, JOHN O. TUOHY, and hereby assert the following claims, and complain of the Respondents, THE UNITED STATES, by the FEDERAL DEPOSIT INSURANCE CORPORATION (hereinafter "FDIC"):

1. This Court has subject matter jurisdiction over these claims pursuant to 12 USC Sec. 1821.

2. Petitioners are former directors of Horizon Federal Savings Bank (hereinafter "Horizon") and are former longtime employees. JOHN R. GRAVEE (age 72) was President and JEROME A. MAHER (age 73) an attorney, was Executive Vice President. For over 15 years Petitioners have been attempting to be paid their ERISA 29 USC 1140 protected written contract retirement and severance benefits.

3. The Federal Deposit Insurance Agency ("F.D.I.C." hereinafter) was the assignee of the assets and liabilities of the Receiver of Horizon Savings Bank, F.S.B. which was accomplished by a Corporate Purchase and Assumption Agreement.

4. The Horizon Receivership, which was preceded by a Horizon Conservatorship all resulted from a Winstar closure of Horizon on January 11, 1990, two days after drastic capital requirement regulation changes were published, which were required by Congressional action later condemned by the Supreme Court in U.S. v. Winstar Corp., 518 U.S. 839 (1996).

5. Plaintiffs were unaware of facts set forth in Par. 3 until shortly after November 3. 2003 when their attorney was in receipt of a motion from the F.D.I.C., to which the Purchase and Assumption Agreement was appended in Maher and Gravee v. F.D.I.C., 03 C 06828 (N.D. Ill. 2005).

6. Part of the Documentation referred to in Par. 4 included a Certificate of Termination of the Receivership which termination was to be effective Jan. 1, 2002.

7. Plaintiff, MAHER, over the course of many years made at least fifteen written inquiries to the F.D.I.C. Receivership concerning the Horizon, its status and accounting as well as their claims.

8. The Defendant well knew of Plaintiffs' ERISA claims, nevertheless.

9. No notice was given to Plaintiffs in advance of the Termination of the receiverships nor of the Purchase and Assumption Agreement when such could result in Termination of their ERISA right contrary to the Due Process requirement of using a method of notice reasonably calculated to inform as mandated by the United States Supreme Court in Tulsa Professional Service v. Joanne Pope, Executrix of Everett Pope, Jr. 485 U.S. 478 (1988).

10. The Plaintiffs duly filed their ERISA claims pursuant to notices from the F.D.I.C.'s predecessors and thereby became the F.D.I.C. predecessors creditors which the F.D.I.C. as well as its predecessors owed a fiduciary duty.

11. Such fiduciary duty owed to Plaintiffs which Defendant violated included the fiduciary duty to pay Plaintiffs, as creditors. Such fiduciary to creditors is mandated by 12 U.S.C. 1823.

12. The F.D.I.C. in section 2.5 of the Corporate Purchase and Assumption Agreement attached hereto was assigned any and all claims to the F.D.I.C. which the receiver "accrued or hereinafter accruing in favor of the Receivership."

13. The holding of U.S. v. Winstar, informs Plaintiffs that a Winstar claim accrued to the Receiver.

14. The F.D.I.C. had a contract duty and a fiduciary duty to unpaid creditors to pursue that claim.

15. The Receiver's duty which perforce , was assumed by the F.D.I.C. and which was not performed was under the terms of 12 U.S.C. § 194 to make payments to creditors on a pro rata basis.

16. On information and belief, all creditor claims were paid by the Receiver except Plaintiffs. As a consequence of non-payment to Plaintiffs the statutory fiduciary duty was breached by the receiver.

17. The receiver transferred and the F.D.I.C. assumed the liabilities and assets of the receiver.

18. The receiver transferred to the F.D.I.C. any Winstar claim it had as set forth in 2.7 of the Corporate Purchase and Assumption Agreement.

19. In this same 2.7 the F.D.I.C. by this contract "assumes" the receiver's obligations to distribute the Winstar type of recover as "to creditors" were thereby specifically made beneficiaries of this contract.

20. Failure to pursue the Winstar type actions to recover damages was a breach of this contract and Defendant's fiduciary duties resulting in some creditors being paid, and others such as Plaintiffs not being paid pro rata, all in violation of Defendant's duties.

WHEREFORE Plaintiffs pray that the Court award Plaintiffs in damages their severance pay and for JEROME A. MAHER of $8,000 per month since he reached his written employment contract retirement age of 65 and for JOHN R. GRAVEE $10,000 per month since he reached his written employment contract retirement age of 65 which amounts are the value of their ERISA claims.

JEROME A. MAHER and JOHN R. GRAVEE

By: ______________________
JOHN O. TUOHY, Their Attorney

JOHN O. TUOHY
5556 N. Sheridan Rd., #1017
Chicago, IL 60640
(773) 769-3486
Ill. Atty. No. 2866501

FIN: 7263
Version 03.04.99

# CORPORATE PURCHASE AND ASSUMPTION AGREEMENT

For Horizon Savings Bank, F.S.B., Wilmette, Illinois
Final Receiver appointed March 7, 1991

THIS CORPORATE PURCHASE AND ASSUMPTION AGREEMENT ("CPA") is made and entered into this 4 day of April, 2000 to be effective as of March 22, 2000, by and between the FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver (the "Receiver") of HORIZON SAVINGS BANK, F.S.B., WILMETTE, ILLINOIS, (the "Failed Institution") (collectively, the "Receivership") and FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity (the "Corporation").

## RECITALS

A. The Receiver has determined pursuant to the authority vested in it by Section 11 of the Federal Deposit Insurance Act, as amended (the "FDIA"), 12 U.S.C. § 1821, that it is appropriate and necessary to terminate the Receivership.

B. In connection with such termination, the Receiver has determined that in accordance with Section 13 of the FDIA, 12 U.S.C. § 1823, it is necessary and appropriate to transfer the remaining assets and certain specified liabilities of the Receivership to the Corporation.

C. The Corporation desires to purchase such assets and assume such liabilities from the Receivership.

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound, the Receiver and the Corporation agree as follows:

## ARTICLE I

## ASSUMPTION OF LIABILITIES AND OBLIGATIONS

1.1 Liabilities Assumed. The Corporation hereby assumes, and agrees to pay, perform and discharge, all of the following liabilities and obligations of the Receivership set forth in this section and, except as expressly set forth elsewhere in this CPA, none other:

(a) The Receivership's contractual obligations listed on Schedule 1 attached hereto.

(b) The Receivership's obligations under the participation loan agreements listed on Schedule 2 attached hereto.

(c) Such other liabilities and obligations of the Receivership listed on Schedule 3 attached hereto.

(d) To the extent payable under the applicable priority of claims provisions including but not limited to 12 C.F.R. Section 360.3 or 12 U.S.C. § 1821(d)(11)(A) (or any successor provisions), the Corporation hereby assumes all of the Failed Institution's liabilities for state income and franchise taxes that may be determined to be due from the Failed Institution.

1.2 Limit of liabilities assumed and inapplicability of deposit insurance. In accordance with the requirements of 12 U.S.C. § 1821(i), the Receiver and the Corporation hereby agree that the liabilities assumed pursuant to this CPA by the Corporation are assumed only to the extent that such liabilities would have been satisfied by the Receiver from assets of the Receivership's estate. The Corporation shall not be obligated to utilize funds from any of the deposit insurance funds which it administers or any other appropriated funds administered by the Corporation.

1.3 No other liabilities assumed. Except for the obligations and liabilities of the Failed Institution and the Receiver specifically described herein, the Corporation shall not assume any obligation or liability of the Failed Institution or the Receiver, and the Corporation shall not be deemed the successor of the Failed Institution or the Receiver for any purpose. Nothing contained in this CPA is intended or shall be construed to give any person other than the Receiver and the Corporation any legal or equitable right, remedy, benefit or claim under or in respect to this CPA, it being the intention of the parties hereto that this CPA and the obligations hereunder are for the sole and exclusive benefit of the Receiver and the Corporation and for the benefit of no other person.

ARTICLE II

PURCHASE OF ASSETS

2.1 Assets Purchased. The Corporation hereby purchases and accepts from the Receiver, and the Receiver hereby sells, assigns, transfers, conveys and delivers to the Corporation, all right, title and interest of the Receiver in and to all of the assets described in a corporate purchase asset list which shall be attached as EXHIBIT "A" to this CPA.

2.2 Liability Released. In consideration of payment received, the Corporation is hereby released from any obligation to pay to the Receiver the proceeds of any claim previously transferred to it by the Receiver through a "contract of sale" or similar document.

2.3 Recording. When required by the Corporation, the Receiver and the Corporation shall work together to record any documents evidencing or relating to the transfer of assets under this CPA that the Corporation may designate, including without limitation, the

assignment of any mortgage, or like instrument, to the Corporation from the Receiver. When so required by the Corporation, the Receiver shall use its best efforts to complete the documentation and delivery thereof required by this Section 2.3 prior to the execution of a Certificate of Termination by the parties hereto which terminates the Receivership.

2.4 Later-Discovered Assets. In addition to the assets transferred to the Corporation pursuant to Section 2.1 of this CPA, the Receiver hereby assigns, transfers and conveys to the Corporation any assets owned by the Receiver the existence or ownership of which are not known to the Receiver as of the date hereof.

2.5 Unknown Claims. The Receiver hereby further assigns, transfers, conveys and sets-over to the Corporation any and all claims, causes, actions or judgments, if any, whether known or unknown, presently accrued or hereafter accruing in favor of the Receivership with respect or relating to the acts or omissions of any individual or entity whose acts or omissions have caused or resulted in losses or damages to the Receivership. This Section 2.5 is limited to claims that arose subsequent to the inception of the receivership and is exclusive of those actions, judgments or claims specified in, and assigned by the Receiver to the Corporation under the provisions of Section 2.1 of this CPA.

2.6 Repurchase Rights. The Receiver hereby assigns, transfers and conveys to the Corporation all of the Receiver's rights with respect to the Receiver's option to repurchase, pursuant to repurchase rights or otherwise, any asset of the Failed Institution or any predecessor thereof. Nothing contained in this Section 2.6 shall obligate the Corporation to purchase any asset.

2.7 Goodwill. The Receiver, to the extent that it has not previously transferred any claim it may have against the United States Government or any instrumentality thereof arising from changes in statutory provisions and regulations that altered the ability of the Failed Institution to include intangible assets, such as "goodwill", for purposes of satisfying minimum regulatory capital requirements, hereby assigns to the Corporation any and all actions, causes, claims, or judgments relating to such claims (and recoveries therefrom) and, further, the Corporation hereby assumes from the Receiver such obligations as the Receiver may have, now or in the future, to distribute any recoveries from such actions, judgments or claims to creditors (including claims by the Federal Deposit Insurance Corporation or its successors in any capacity) and shareholders of the Failed Institution whether such claims were transferred previously or under this Section 2.7, in accordance with applicable law.

2.8 Claims Relating to Taxes. The Receiver hereby further assigns, transfers, conveys and sets over to the Corporation any and all claims, causes of action, judgments or moneys received, whether known or unknown, presently accruing to or having been accrued by, the Receivership, which claims or moneys relate to federal or state tax refunds or claims for any tax refunds to which the Receiver is entitled or would be entitled or has a right or interest therein, including, but not limited to, claims for payments to, or refunds held by, any holding company of the Receiver against any taxing authority whatsoever.

ARTICLE III

RESTITUTION ORDERS

The Receiver hereby designates the Corporation as the appropriate recipient of any restitution ordered, or which may later be ordered, in favor of the Receiver as part of any civil, criminal or administrative proceedings.

ARTICLE IV

POWER OF ATTORNEY

In connection herewith, the Receiver has executed and delivered, or will execute and deliver, to the Corporation a Power of Attorney Coupled With An Interest in the form set forth in Exhibit "B". The Power of Attorney Coupled With An Interest is executed, in part, in order that the Corporation may take such actions and exercise such powers set forth therein with respect to the rights, interests, assets and obligations purchased and assumed under this CPA. It is specifically intended that the Power of Attorney Coupled With An Interest shall be unrestricted and irrevocable and shall specifically survive the termination of this Receivership. The Corporation is empowered to record, deliver, present or otherwise utilize the Power of Attorney Coupled With An Interest or this CPA for any purposes it deems appropriate and necessary including, but not limited to, documenting its ownership, rights, interests, obligations or authorities with respect to the assets purchased or liabilities assumed herein. The Power of Attorney Coupled With An Interest may be executed in duplicate originals (each of which shall be considered an original) as the Receiver and the Corporation deem necessary.

ARTICLE V

DISTRIBUTION OF RECEIVER'S FINAL DIVIDEND

The Corporation hereby agrees to issue and distribute checks on behalf of the Receiver for the payment of dividends to creditors of the Receivership from the date hereof until the termination of the Receivership. The funding for the payment of such checks shall be solely the responsibility of the Receivership. In connection with issuance of such checks, the Corporation shall clearly disclose to the recipients thereof that the checks are being issued on behalf of the Receivership.

ARTICLE VI

CONSIDERATION

6.1 Calculation of Payment. As consideration for the assets, releases, rights and purchase options acquired by the Corporation under this CPA, (a) the Corporation shall assume

the liabilities and obligations specified in Article I and certain other obligations, duties and liabilities as provided elsewhere in this CPA, and (b) the Corporation shall pay to the Receiver an amount, the receipt and sufficiency of which is hereby acknowledged by the Receiver, equal to the sum of the following:

(i) the mutually agreed purchase price of the assets transferred pursuant to Section 2.1 and obligations released, if any, pursuant to Section 2.2 of this CPA; minus

(ii) the aggregate value as set forth in Schedule 3 of the liabilities assumed pursuant to Section 1.1 (c).

6.2 Method of Payment. Such payment shall be made, if any payment is required, in any manner agreed to by the Receiver and the Corporation, including the reduction of any obligation of the Receiver to the Corporation, such as obligations of the Receiver to the Corporation as subrogee of the depositors of the Failed Institution or any funds advanced to the Receiver by the Corporation.

## ARTICLE VII

## MISCELLANEOUS

7.1 Entire Agreement. This CPA and the Power of Attorney Coupled With An Interest referred to in Article IV hereof embody the entire agreement of the parties in relation to the subject matter herein and supercede all prior understandings or agreements, oral or written, between the parties.

7.2 Headings. The headings and subheadings of the Articles and Sections contained in this CPA are inserted for convenience only and shall not affect the meaning or interpretation of this CPA or any provision hereof.

7.3 Counterparts. This CPA may be executed in any number of counterparts, and by the different duly authorized representatives of the parties on separate counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same agreement.

7.4 Governing Law. This CPA and the rights and obligations hereunder shall be governed by and construed in accordance with the federal law of the United States of America, and in the absence of controlling Federal law, in accordance with the laws of the State in which the Failed Institution had its principal place of business.

7.5 Successors. All terms and conditions of this CPA shall accrue to and be binding on the successors and assigns of the Corporation.

7.6 Severability. If any provision of this CPA is determined by a court of competent jurisdiction to be invalid or unenforceable, then, to the extent possible, all of the remaining provisions of this CPA shall remain in full force and effect and shall be binding upon the parties.

7.7 Exhibits and Schedules. The following exhibits and schedules contemplated by this CPA are attached hereto:

| | |
|---|---|
| Exhibit A | Corporate Purchase Asset List |
| Exhibit B | Power of Attorney Coupled With An Interest |
| Schedule 1 | Assumption of Contracts |
| Schedule 2 | Participation Loans Assigned |
| Schedule 3 | Liabilities Assumed |

IN WITNESS WHEREOF, the Receiver and the Corporation have caused this CPA to be executed on the date first above written.

FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF HORIZON SAVINGS BANK, F.S.B. WILMETTE, ILLINOIS

By: [signature]

Name: Steven E. Hester

Attorney-In-Fact

FEDERAL DEPOSIT INSURANCE CORPORATION, IN ITS CORPORATE CAPACITY

By: [signature]

Name: Benjamin J. Groner

Title: Attorney-In-Fact

00115

ACKNOWLEDGEMENTS

STATE OF TEXAS )
) SS
COUNTY OF DALLAS )

I HEREBY CERTIFY that on this 4 day of April, 2000, before me personally appeared Steven E. Hester as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF HORIZON SAVINGS BANK, F.S.B., who is personally known to me, who signed the foregoing instrument and who acknowledged the execution thereof to be his/her free act and deed for the uses and purposes therein mentioned.

WITNESS my signature and official seal at Dallas, Texas, in the County of Dallas.

Betty M. Cook

Print Name: Betty M. Cook
NOTARY PUBLIC
My Commission Expires: 2-11-2003

[NOTARIAL SEAL]

BETTY M. COOK
MY COMMISSION EXPIRES
February 11, 2003

STATE OF TEXAS )
SS
COUNTY OF DALLAS

I HEREBY CERTIFY that on this 4 day of April, 2000, before me personally appeared Benjamin J. Groner as Attorney-in-Fact for the FEDERAL DEPOSIT INSURANCE CORPORATION who is personally known to me, who signed the foregoing instrument and who acknowledged the execution thereof to be his free act and deed for the uses and purposes therein mentioned.

WITNESS my signature and official seal at Dallas, Texas, in the County of Dallas.

Betty M. Cook

Print Name: Betty M. Cook
NOTARY PUBLIC
My Commission Expires: 2-11-2003

[NOTARIAL SEAL]

BETTY M. COOK
MY COMMISSION EXPIRES
February 11, 2003

00116

EXHIBIT A

CORPORATE PURCHASE ASSET LIST

# Corporate Purchase Asset and Liability Listing

| | |
|---|---|
| HOME LOCATION: | 760 |
| TERMINATING FIN and FIN NAME: | 7282, Horizon Savings Bank, F.S.B. |
| CORPORATE PURCHASE FIN #: | 7460 |
| CORPORATE PURCHASE DATE: | 03/22/00 |

| | Asset Type or GL Account | MID | Servicer Name or Responsible Entity | Loan Number | Name | Principal Balance | Participation Principal | Net Balance | Corporate Purchase Amount |
|---|---|---|---|---|---|---|---|---|---|
| **ASSETS** | | | | | | | | | |
| 1 | 035901/2 | SECRTY | FIMS / CTM | | O/R Miscellaneous | 104,904.84 | 0.00 | 104,904.84 | 10,908.47 |
| 2 | 32A | | CTM | 2583888799 | Wilshire Financial (Miller) | 10,857.95 | 0.00 | 10,857.95 | 7,469.64 |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |
| 8 | | | | | | | | | |
| 9 | | | | | | | | | |
| 10 | | | | | | | | | |
| 11 | | | | | | | | | |
| | | | | | TOTAL ASSETS | $115,762.79 | $0.00 | $115,762.79 | $18,378.11 |
| **LIABILITIES** | | | | | | | | | |
| 1 | (Z6901 | SECRTY | FIMS /CTM | | Trustee for Owner NFC | 33,945.38 | 0.00 | 33,945.38 | [illegible] |
| 2 | 199806 | RWESTL | FIMS | | Est Liab-Reps and Warranties | 19,891.74 | 0.00 | [illegible] | 19,891.74 |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |
| | | | | | TOTAL LIABILITIES | $53,837.12 | $0.00 | $53,837.12 | [illegible] |

PREPARED BY: Kevin Coston 3-23-00

Kevin Coston — Date

Financial Mgmt Analyst

CONCURRED BY: [signature] 3-23-2000

Betty Leung — Date

Senior Accountant

RECEIVED DALLAS MAR 27 2000 Terminations/Settlement

Page 1 of 1

00117

EXHIBIT B

POWER OF ATTORNEY COUPLED WITH AN INTEREST

[Behind this Cover Page]

**PREPARED BY:**
Jack Vandevoort
Federal Deposit Insurance Corporation
Legal Division
1910 Pacific Avenue, ODC-12
Dallas, TX 75201

FIN: 7182
POA-Thrift
Version 02.12.99

# POWER OF ATTORNEY
## Coupled With An Interest

KNOW ALL MEN BY THESE PRESENTS, THAT

A. WHEREAS, Horizon Savings Bank, F.S.B., Wilmette, Illinois, (the "Failed Institution") was closed on March 7, 1991 by the Office of Thrift Supervision ("OTS") and the Resolution Trust Corporation ("RTC") was appointed as receiver, which appointment was accepted by the RTC; and,

A.1. WHEREAS, effective January 1, 1996, the Federal Deposit Insurance Corporation succeeded the RTC as receiver of Horizon Savings Bank, F.S.B., by operation of law pursuant to 12 U.S.C. § 1441a(m), (in such capacity, the FDIC being referred to herein interchangeably as "FDIC-Receiver" or "Receiver");

B. WHEREAS, pursuant to 12 U.S.C. § 1821(d)(2)(A), FDIC-Receiver, being the GRANTOR herein, succeeded by operation of law, to all rights, titles, powers and privileges of the Failed Institution with respect to the assets of the Failed Institution; and,

C. WHEREAS, by virtue of 12 U.S.C. § 1823(d)(1), FDIC-Receiver is empowered to offer the assets of the Failed Institution for sale to the FDIC in its Corporate Capacity ("FDIC-Corporate"), a separate and distinct legal entity and, pursuant to 12 U.S.C. § 1823(d)(3), FDIC-Corporate shall have all the rights, powers, privileges and authorities of FDIC-Receiver under 12 U.S.C. § 1821 and 12 U.S.C. § 1825(b) with respect to any asset acquired or liability assumed from FDIC-Receiver; and,

D. WHEREAS, FDIC-Receiver has liquidated certain of the assets of the Failed Institution and there are certain known and unknown residual or remaining assets and associated collateral of the Failed Institution which FDIC-Receiver has sold, assigned, transferred, conveyed and delivered to FDIC-Corporate pursuant to a certain document entitled Corporate Purchase and Assumption Agreement ("CPA Agreement") by and between FDIC-Receiver and FDIC-Corporate of even date herewith, which document is on file at the offices of FDIC-Corporate noted above, under which document certain specific residual assets of FDIC-Receiver are scheduled and identified, and in which it is specifically set forth, contemplated and intended that this Power of Attorney Coupled With An Interest is to be executed to carry out the intent and purpose of the CPA Agreement, the form of this Power of Attorney Coupled With An Interest being attached to and made a part of the CPA Agreement as Exhibit "B"; and,

E. WHEREAS, notwithstanding the provisions of 12 U.S.C. § 1823(d) authorizing the sale of assets from FDIC-Receiver to FDIC-Corporate and 12 U.S.C. § 1821(d)(2)(G)(i)(II), permitting FDIC-Receiver to transfer

assets without approval (except as specifically set forth therein), assignment or consent with respect to such transfers, FDIC-Receiver and FDIC-Corporate desire to provide a mechanism whereby FDIC-Corporate may take such actions as FDIC-Receiver is authorized to take at law with respect to any and all assets transferred under the CPA Agreement; and,

F. WHEREAS, in addition to the specific and known residual or remaining assets and associated collateral of the Failed Institution which have been conveyed and assigned by FDIC-Receiver to FDIC-Corporate under the CPA Agreement, there may be additional assets owned by FDIC-Receiver, the existence, identification and ownership of which are not known to FDIC-Receiver as of the date hereof; and,

G. WHEREAS, while this Power of Attorney Coupled With An Interest will be effective as of the date of its execution and delivery by FDIC-Receiver to FDIC-Corporate, which execution and delivery may predate the termination of the receivership and discharge of FDIC-Receiver, it is nevertheless specifically contemplated that the receivership will terminate and FDIC-Receiver will be discharged, and, after such termination and discharge, FDIC-Corporate shall (i) continue to be vested with all the rights, titles and interests in and to the remaining and residual assets and associated collateral of the Failed Institution (to the same extent as was vested at law in FDIC-Receiver prior to termination of the receivership and the discharge of FDIC-Receiver), and (ii) be empowered to continue and pursue such acts or actions with respect to those assets and associated collateral, or initiate and commence in its own right any and all acts or actions it, in its sole discretion, may determine are necessary to confirm, defend, collect upon, assert, enforce, recover upon, release, surrender, abandon, cancel, satisfy, discharge, endorse, sell, assign, transfer or convey any of its legal, equitable or beneficial rights, titles and interests in or with respect to any or all such assets and associated collateral sold, assigned, transferred or delivered to FDIC-Corporate under or pursuant to the CPA Agreement; and,

H. WHEREAS, certain notes, loans, indebtedness, judgments or other obligations, including, without limitation, mortgages, deeds of trust, security agreements or other conveyances of interests in real or personal property (hereinafter "Failed Institution Collateral"), of certain former debtors/obligors of the Failed Institution (or FDIC-Receiver) may have, in fact, been paid, discharged or otherwise satisfied prior to the date the Failed Institution was placed in receivership and/or certain former debtors/obligors may have failed to have satisfactions of judgments or releases of Failed Institution Collateral properly filed or entered of public record due to their mistake, inadvertence, oversight, incapacity or demise, or in having lost or misplaced the same, and, by virtue of the foregoing, title to or ownership of certain real and personal property (or both) utilized as Failed Institution Collateral by such former debtors/obligors to secure the payment or enforcement of now paid, satisfied or discharged notes, loans, indebtedness, judgments or other obligations may have become clouded, uncertain or placed in doubt or controversy; and,

I. WHEREAS, FDIC-Receiver desires now to provide for a mechanism which will, upon termination of the Failed Institution receivership and the discharge of FDIC-Receiver, allow a response to the requests, inquiries or demands of certain former debtors/obligors of the Failed

00120

Institution (or FDIC-Receiver) seeking: (1) to have their paid notes, loans, indebtedness, judgments or other obligations duly endorsed as paid, cancelled, satisfied or otherwise discharged, and the documents evidencing same returned or released; and/or (2) the execution, delivery, filing or recordation of necessary and appropriate satisfactions or releases in order to clear their title to or confirm their ownership of certain real or personal property (or both) formerly utilized as Failed Institution Collateral:

NOW THEREFORE, in order to effectuate the intent, purpose and undertakings set forth herein and in the CPA Agreement, (a) FDIC-Receiver hereby makes, constitutes and appoints FDIC-Corporate as the true and lawful attorney-in-fact of FDIC-Receiver, and (b) FDIC-Receiver, as GRANTOR herein, does hereby empower, authorize and grant to FDIC-Corporate, as GRANTEE herein, and as said attorney-in-fact for FDIC-Receiver, all rights, powers, privileges and authorities of FDIC-Receiver to take such actions (which FDIC-Receiver could have heretofore or hereafter exercised or undertaken in its own right) as are hereafter deemed necessary, requisite and proper by FDIC-Corporate with respect to the assets, titles, interests, rights, powers, privileges, and authorities acquired by FDIC-Corporate under or pursuant to the CPA Agreement or this Power of Attorney Coupled With An Interest, including, without limitation and with respect to any and all real and personal property and any and all interests therein so acquired by FDIC-Corporate (or owned by FDIC-Receiver prior to the termination of the receivership and thereby within the rights and powers to act thereon granted herein), the power to (i) sell, convey, transfer, exchange, option, grant easements upon or across or licenses in, mortgage, encumber, hypothecate, and contract for any and all such real or personal property (or both) and any and all interests therein, on such terms and for such consideration as FDIC-Corporate may deem appropriate in its sole and absolute discretion, and to make, execute, acknowledge and deliver a good and sufficient deed or deeds of conveyance or other instrument or instruments, with or without warranty or warranties, as requisite, necessary, proper or desirable to effect any and all such transactions, (ii) renew, extend and modify from time to time, and foreclose, any deed of trust, mortgage, or other lien on any such real or personal property (or both) and any and all interests therein, and (iii) deal with all such real and personal property and all interests therein as its own and to use and account for the proceeds thereof as it sees fit, hereby giving and granting to FDIC-Corporate, GRANTEE herein, full power and authority to do and perform all and every act and thing whatsoever requisite, necessary, proper or desirable to be done in the premises as fully to all intents and purposes as FDIC-Receiver, GRANTOR herein, might or could do or have done if present. This Power Of Attorney Coupled With An Interest and the rights and powers herein granted are coupled with (A) simultaneously or previously acquired and vested property ownership interests conveyed by FDIC-Receiver to FDIC-Corporate under the CPA Agreement or hereby, and (B) assumed rights and obligations with respect to former debtors/obligors of the Failed Institution assigned by FDIC-Receiver to FDIC-Corporate under the CPA Agreement or hereby, which property ownership interests and assumed rights and obligations together constitute the subject matter of this Power of Attorney Coupled With An Interest and as to which the rights and powers granted herein specifically relate. The rights and powers granted herein may be exercised by FDIC-Corporate at any time from and after the date hereof

00121

and shall specifically survive, be unrestricted and irrevocable and remain in full force and effect following termination of the Failed Institution receivership and the discharge of FDIC-Receiver, in order that FDIC-Corporate, at its sole option and discretion, may in its own right and capacity, or pursuant to the rights and powers granted herein, act in its own name or in the name, place, stead or on behalf of FDIC-Receiver, as its attorney-in-fact, which acts or actions may include, but are not limited to, the following:

(1) initiate, commence, execute, undertake or pursue such acts or actions previously either commenced by the Failed Institution or FDIC-Receiver or take, commence or initiate such acts or actions as FDIC-Corporate deems necessary, proper or desirable in order to confirm, defend, collect upon, assert, enforce, recover upon, release, surrender, abandon, cancel, satisfy, discharge, endorse, sell, assign, transfer or convey any of its legal, equitable or beneficial rights, titles or interests in or with respect to any of the residual or remaining assets and associated collateral of FDIC-Receiver conveyed under or pursuant to the CPA Agreement or this Power of Attorney Coupled With An Interest and assigned to FDIC-Corporate thereby, and, in addition, to take any and all acts or actions which FDIC-Receiver is or was permitted to take under applicable law; and,

(2) with regard to any and all requests, inquiries or demands of former debtors/obligors of the Failed Institution (or FDIC-Receiver) regarding their paid notes, loans, indebtedness, judgments or other obligations or the Failed Institution Collateral formerly securing the same, to act for and on behalf of FDIC-Receiver for the benefit of any such debtors/obligors as, where and if appropriate, to endorse notes or loans as paid, and to execute satisfactions of judgments or releases of associated collateral, including, without limitation, mortgages, deeds of trust, security agreements or other pledges, assignments or conveyances of property securing the payment of notes, loans, debts or other obligations presumptively due and owing to the Failed Institution (or FDIC-Receiver), which notes, loans, debts, judgments or other obligations were, prior to the execution and delivery of this Power of Attorney Coupled With An Interest or the termination of the receivership and discharge of FDIC-Receiver, in fact, paid, discharged or otherwise satisfied.

FDIC-Corporate, by executing this instrument hereby confirms and acknowledges receipt and delivery of the Failed Institution receivership's residual and remaining assets and associated collateral.

Nothing contained herein shall act to prohibit FDIC-Receiver from acting in its own name and on its own behalf (and on behalf of the Failed Institution) with respect to the subject matter hereof at any time prior to the termination of the receivership.

Nothing contained herein is intended or should be construed as an assumption of liability by FDIC-Corporate for any demand, claim, cause, liability or judgment, previously, now or hereafter asserted or rendered against the Failed Institution or FDIC-Receiver with respect to the residual and remaining assets identified herein or under the CPA Agreement or otherwise, the specific liabilities, if any, of FDIC-

Receiver assumed by FDIC-Corporate being identified and set forth in the CPA Agreement and only therein.

The recitals set forth hereinabove are hereby made a part of the text of this Power of Attorney Coupled With An Interest as fully as if set forth herein in their entirety.

IN WITNESS WHEREOF, the Receiver and the Corporation have caused this Power of Attorney Coupled With An Interest to be executed on this 4 day of April, 2000.

GRANTOR:
FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF HORIZON SAVINGS BANK, F.S.B. WILMETTE, ILLINOIS

By: [signature]
Name: Steven E. Hester
Title: Attorney-in-Fact

GRANTEE:
FEDERAL DEPOSIT INSURANCE CORPORATION, IN ITS CORPORATE CAPACITY

By: [signature]
Name: Benjamin J. Groner
Title: Attorney-in-Fact

00123

7282

# CERTIFICATE OF TERMINATION

The undersigned hereby certify that.

The Federal Deposit Insurance Corporation (FDIC), as Receiver for 7282, Horizon Savings Bank, F.S.B, Wilmette, Illinois (Receiver) has been authorized to take all actions necessary to terminate the receivership estate of, Horizon Savings Bank, F.S.B.(Receivership Estate);

All assets of the Receivership Estate not previously disposed of have been purchased from the Receiver by the FDIC in its Corporate capacity (FDIC-Corporate) for fair consideration and transferred to FDIC-Corporate pursuant to a corporate purchase and assumption agreement;

The Receiver has made all dividend distributions required by law;

The charter of Horizon Savings Bank, F.S.B., has been deemed to be canceled;

The Receiver has irrevocably authorized and appointed FDIC-Corporate as its attorney-in-fact to execute and file any and all documents and do such other and further acts on behalf of the Receiver as FDIC-Corporate may deem necessary to vest in FDIC-Corporate with full legal and beneficial title to the any and all assets transferred to FDIC-Corporate from the Receivership Estate;

The Receiver has further irrevocably authorized and appointed FDIC-Corporate as its attorney-in-fact to execute and file any and all documents that may be required to be executed by the Receiver which FDIC-Corporate, in its sole discretion, deems necessary; including but not limited to releases, discharges, satisfactions, endorsements, assignments and deeds;

Effective January 1, 2002 the Receivership Estate has been terminated, the Receiver discharged, and the Receivership Estate has ceased to exist as a legal entity.

FDIC as Receiver for
Horizon Savings Bank, F.S.B.

[signature] 12-11-01

Joe Schuitema — Date
Resolutions & Receiverships Specialist

Federal Deposit Insurance Corporation

[signature] 12/10/01

Steve Stockton — Date
Supervisory Resolutions & Receiverships Specialist

# SCHEDULE 1

## ASSUMPTION OF CONTRACTS

None

# SCHEDULE 2

## PARTICIPATION LOANS ASSIGNED

None

SCHEDULE 5

LIABILITIES ASSUMED

# Corporate Purchase Asset and Liability Listing

| | |
|---|---|
| HOME LOCATION: | 760 |
| TERMINATING FIN and FIN NAME: | 7212, Horizon Savings Bank, F.S.B. |
| CORPORATE PURCHASE FIN #: | 7460 |
| CORPORATE PURCHASE DATE: | 03/22/00 |

ASSETS

| | Asset/Liab GL Account | [illegible] | [illegible] Title or Responsible Entity | [illegible] Number | Title | [illegible] Balance [illegible] | Reduction of Principal | [illegible] Balance | Corporate Repurchase Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 0359052 | SECRTY | FIMS7 CTM | | O/R Miscellaneous | 104,904.84 | 0.00 | 104,904.84 | 10,909.47 |
| 2 | 321 | | CTM | 2383888799 | Wilshire Financial (Miller) | 10,857.95 | 0.00 | 10,857.95 | 7,469.64 |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |
| 8 | | | | | | | | | |
| 9 | | | | | | | | | |
| 10 | | | | | | | | | |
| 11 | | | | | | | | | |
| | | | | | TOTAL ASSETS | $115,762.79 | $0.00 | $115,762.79 | $18,[illegible].11 |

LIABILITIES

| | Asset/Liab GL Account | [illegible] | [illegible] Title or Responsible Entity | [illegible] Number | Title | [illegible] Balance [illegible] | Reduction of Principal | [illegible] Balance | Corporate Repurchase Amount |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 129901 | SECRTY | FIMS/CTM | | Trustee for Owner NBC | 33,945.38 | 0.00 | 33,945.38 | 0.00 |
| 2 | 189805 | RWESTL | FIMS | | Est Liab-Reps and Warranties | 19,691.74 | 0.00 | 19,691.74 | 19,691.74 |
| 3 | | | | | | | | | |
| 4 | | | | | | | | | |
| 5 | | | | | | | | | |
| 6 | | | | | | | | | |
| 7 | | | | | | | | | |
| | | | | | TOTAL LIABILITIES | $53,637.12 | $0.00 | $53,637.12 | $19,691.74 |

PREPARED BY: Kevin Coston 3-23-00

Kevin Coston
Financial Mgmt Analyst
Date

CONCURRED BY: [signature] 3-23-2000

Betty Leung
Senior Accountant
Date

RECEIVED
DALLAS
MAR 27 2000
Terminations/
Settlement/SBP

Page 1 of 1